UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORENA SUAREZ GUZMAN, et al., | Case No.: 1:21-cv-00348-JLT-SKO |
| Plaintiffs, | ORDER GRANTING MOTION TO REMAND AND DECLINING TO ADDRESS MOTIONS TO DISMISS |
| v. | |
| PERI & SONS FARMS OF CALIFORNIA, LLC, et al. | (Docs. 31, 36, 40) |
| Defendants. | |

## I. INTRODUCTION

Lorena Suarez Guzman brings this class action lawsuit alleging wage and hour and unfair competition claims against Defendants. (Doc. 1-2 at 8–17) Plaintiff contends the action must be remanded to state court because that Court lacks jurisdiction. (Doc. 31.) Defendants oppose the motion to remand and move to dismiss the operative complaint for failure to state a claim and for improper joinder of Estrada. (Docs. 36, 40, 41.) The Court finds the matter is suitable for decision without oral argument, and no hearing will be held pursuant to Local Rule 230(g). For the reasons set forth below, the motion to remand is **GRANTED**.

## II. BACKGROUND AND PROCEDURAL HISTORY

This dispute involves a putative class action filed August 31, 2020, by Lorena Suarez Guzman in the Superior Court of California, County of Imperial (Case No. ECU001546) against Peri & Sons Farms of California, Roy Estrada, George Mainas, and several unnamed defendants.

(Doc. 1-2.) Guzman alleged a series of wage and hour violations giving rise to six causes of action under the California Labor Code and one cause of action under California Business and Professions Code section 17200. (Doc. 1-2 at 8–17.) Specifically, she alleged that the Defendants (1) failed to pay overtime wages, (2) failed to pay minimum wages, (3) failed to provide meal periods, (4) failed to provide rest periods, (5) failed to pay wages upon termination, (6) failed to provide accurate wage statements, and (7) engaged in unfair competition. (*Id.*)

Defendants removed the action to the U.S. District Court for the Southern District of California on October 2, 2020, asserting jurisdiction under 28 U.S.C. § 1332(a) and under the Class Action Fairness Act. (Doc. 1 at 2–7.) Following a motion to dismiss, Guzman filed an amended complaint on October 29, 2020, in which she raised the same seven claims asserted in the original complaint. (Doc. 10.) Defendants filed a motion to transfer the case to the U.S. District Court for the Eastern District of California on November 19, 2020, which was granted on March 8, 2021.[1] (Docs. 15, 23.)

Guzman next moved to remand the action to the state court in which it was filed; Defendants filed a motion to dismiss Defendant Roy Estrada for improper joinder and a motion to dismiss the action outright for failure to state a claim. (Docs. 31, 36, 40.) Following a stipulation by the parties, this Court entered an order terminating George Mainas as a defendant. (Doc. 37.)

### III.    MOTION TO REMAND

Guzman argues this action must be remanded to state court because this Court lacks jurisdiction under 28 U.S.C. § 1332 and under CAFA. (Doc. 31 at 11–27.) The Court will consider each argument in turn.

**A.    Jurisdiction Under 28 U.S.C. § 1332**

  1.    Applicable Standards.

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a). "To remove a case from state court to federal court, a defendant must file in the federal forum a notice of removal 'containing a short

---

[1] In the transfer order, the Court also denied without prejudice Defendants' two outstanding motions to dismiss and Guzman's outstanding motion to remand. (Doc. 23-1 at 5.)

2

1   and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v.*
2   *Owens*, 574 U.S. 81, 83 (2014) (quoting 28 U.S.C. § 1446(a)). Here, Defendants invoke the
3   diversity jurisdiction statute (*see* Doc. 1 at 1), which grants federal district courts jurisdiction over
4   civil actions between citizens of different states when the amount in controversy exceeds $75,000,
5   exclusive of interest and costs. 28 U.S.C. § 1332(a)(1).

6   Diversity jurisdiction may arise only when complete diversity exists, meaning that no
7   plaintiff may be from the same state as any defendant. *Abrego v. Dow Chem. Co.*, 443 F.3d 676,
8   679 (9th Cir. 2006). Diversity jurisdiction does not exist when a non-diverse defendant is
9   fraudulently joined as a sham defendant. *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d
10  543, 548 (9th Cir. 2018); *Nasrawi v. Buck Consultants, LLC*, 776 F. Supp. 2d 1166, 1175 (E.D.
11  Cal. 2011).

12  A civil action filed in state court may not be removed to federal court if any of the
13  defendants is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(b)(2). When a
14  party removes a case to federal court under 28 U.S.C. § 1446, that party bears the burden of
15  establishing that jurisdiction exists by a preponderance of the evidence. *Kokkonen v. Guardian*
16  *Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566–67 (9th
17  Cir. 1992). "[A]ny doubt about the right of removal [under 28 U.S.C. § 1332] requires resolution
18  in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009)
19  (citing *Gaus*, 980 F.2d at 566). Once a defendant has carried its burden establishing subject-
20  matter jurisdiction, the burden of production shifts to the plaintiff to rebut evidence establishing
21  jurisdiction. *Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 885 (S.D. Cal. 2021).

22  The parties appear to agree that Defendant Peri & Sons is a citizen of Nevada and that
23  Defendant Roy Estrada is a citizen of California. (*See* Doc. 1 at 3; Doc. 31 at 22). The parties'
24  contest Plaintiff's citizenship, and Defendant maintains that Estrada was fraudulently joined to
25  this lawsuit and that Estrada's citizenship should not be considered for purposes of evaluating
26  diversity jurisdiction.

27       2.       Plaintiff's Citizenship
28  Defendants assert in their Notice of Removal that Guzman is a California citizen. (Doc. 1

3

at 3.) Guzman acknowledges in her Amended Complaint that she is a resident of California, but she makes no claim as to her citizenship. (Doc. 10 at 2.) In her Motion to Remand, Guzman states that "Defendants fail to make the requisite showing that Plaintiff is a citizen of California," citing to case law for the proposition that a litigant's state of residency may not necessarily be their state of citizenship. (Doc. 31 at 9, 20–21 (citing *Ehrman v. Coz Commc'ns, Inc.*, 932 D.3d 1223, 1227 (9th Cir. 2019); *Mondragon v. Capital One Auto. Fin.*, 736 F.3d 880, 885–86 (9th Cir. 213); *Kantor v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001); *Acridge v. Evangelical Lutheran Good Samaritan Soc.*, 334 F.3d 444, 448 (5th Cir. 2003)).)

In response, Defendants provide evidence that at least arguably establishes Guzman's California residency, including U.S. Customs and Immigration Services Employment Eligibility Verification Form I-9's executed in 2017 and 2019 providing California addresses for Guzman. (Docs. 41-5 and 41-6). One of those documents also indicates that Guzman possesses a California Driver's License. (Doc. 45-6.) A natural person's citizenship for purposes of the diversity statute is "determined by her state of domicile." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). However, an individual's residence "is taken to be his domicile until facts adduced establish the contrary." *Anderson v. Watts*, 138 U.S. 694, 706 (1891); *see also Vazquez-Ceron v. Ford Motor Co.*, No. 20-CV-01318 W (KSC), 2020 WL 5905184, at *1 (S.D. Cal. Oct. 6, 2020) (defendant's unrebutted production of vehicle purchase contract listing a California address for plaintiff sufficient to establish plaintiff's domicile because "[t]he place where a person lives is taken to be his domicile until facts adduced establish the contrary").

The Court finds Defendants' evidence sufficient to demonstrate that Guzman is a California citizen. The burden then shifts to Guzman to establish that her citizenship lies outside of her residential state of California. *See Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986). She produced no such evidence.

        3.        <u>Estrada Has Not Been Fraudulently Joined</u>

Defendants contend that Defendant Estrada's California citizenship should not be considered in evaluating diversity because Estrada was fraudulently joined to this lawsuit. (Doc. 41 at 11.) Defendants refer to their separate motion to dismiss the claims against Estrada as

grounds for a finding that he was fraudulently joined here. (*See* Doc. 40 at 8–12.)

Joinder is deemed fraudulent if the plaintiff fails to state a cause of action against the non-diverse defendant, and "[t]hat failure is obvious according to the well-settled rules of the state." *Nasrawi*, 776 F. Supp. 2d at 1175. A finding of fraudulent joinder requires a strong showing—either that there occurred "actual fraud in the pleading of jurisdictional facts," *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (quotation omitted), or that an "individual[] joined in the action cannot be liable on any theory." *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998). Put another way, "if there is a possibility that a state court would find that the complaint states a cause of action against any of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." *Hunter*, 582 F.3d at 1046.

Courts may examine potentially fraudulent joinder by engaging in a "summary inquiry" to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant . . ." *Id.* at 1044. (citation omitted). The court can "look beyond the pleadings to determine if a defendant was fraudulently joined," but "a plaintiff need only have one potentially valid claim against a non-diverse defendant" to survive a fraudulent joinder challenge." *Nasrawi*, 776 F. Supp. 2d at 1170. Courts maintain a general presumption that the inclusion of a non-diverse defendant is not for the purposes of creating a sham defendant. *See Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Thus, "[f]raudulent joinder must be proven by clear and convincing evidence." *Id.* In performing this inquiry, "the district court must consider . . . whether a deficiency in the complaint can possibly be cured by granting the plaintiff leave to amend." *Grancare,* 889 F.3d at 550. Moreover, in the context of a fraudulent joinder analysis, the Court "must evaluate the factual allegations and evidence in the light most favorable to the plaintiff, resolving all contested issues of fact in favor of the plaintiff." *McGrann v. AT&T Mobility Servs., LLC*, No. 2:16-cv-00701-TLN-KJN, 2016 WL 6205596 at *3 (E.D. Cal. Oct. 21, 2016) (citing *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003)).

The Amended Complaint[2] alleges that Estrada is liable for various wage and hour violations by virtue of California Labor Code § 558.1, which provides that "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated [various wage and hour provisions] may be held liable as the employer for such violation." Cal. Lab. Code § 558.1(a). The statute further defines "other person acting on behalf of an employer" as "a natural person who is an owner, director, officer, or managing agent of the employer." *Id.*, § 558.1(b). The Amended Complaint asserts that Estrada, "in his capacity as the Production Manager and/or Managing Agent exercised control over the wages, hours and/or working conditions of Plaintiff and other Class Members, including by informing employees when to report to work and what work hours should actually be recorded (including by informing Plaintiff that she was to wash her hands before clocking in), violated, or caused to be violated, the above-referenced and below-referenced Labor Code provisions in violation of Labor Code section 558.1." (Doc. 10, ¶ 4.) Plaintiff also alleges that each Defendant, including Estrada, "was the agent, principal, employee, employer, representative, joint venture or co-conspirator of each of the other defendants, either actually or ostensibly, and in doing the things alleged herein acted within the course and scope of such agency, employment, joint venture, and conspiracy." (*Id.* at ¶ 4.)

In arguing that Estrada was fraudulently joined, Defendants first point to *McCabe v. General Foods Corp.*, an employment action in which the Ninth Circuit held that a district court properly dismissed claims against individual supervisors. 811 F.2d 1336, 1339 (1987). The court did so under California's common law doctrine of manager's privilege, which dictates that "if an advisor is motivated in part by a desire to benefit his principal," his conduct is privileged. *Id.* (quoting *Los Angeles Airways, Inc. v. Davis*, 687 F.2d 321, 328 (9th Cir. 1982)).

Guzman responds that *McCabe* is inapposite because the case arose in the context of a wrongful discharge suit, rather than a wage and hour action. She argues that the doctrine of manager's privilege should not be read as immunizing misconduct in the wage and hour context.

---

[2] Although Defendants removed this action based upon the facts alleged in the original complaint (Doc. 1-2), because the fraudulent joinder inquiry calls upon the Court to consider whether facts could be alleged to state a claim against Estrada, it is appropriate to consider the Amended Complaint's allegations.

(Doc. 45 at 9–10.)

The Court agrees. California courts have observed that "[t]he scope of the manager's privilege, as developed under California's common law . . . is neither clear nor consistent." *Huynh v. Vu*, 111 Cal. App. 4th 1183, 1194 (2003); *see also Graw v. Los Angeles Cnty. Metro. Transp. Auth.*, 52 F. Supp. 2d 1152, 1155 (C.D. Cal. 1999) (noting that "there is no consensus of California decisions" as to when the privilege applies). However, courts developed the privilege in the context of intentional interference with contract claims. *See Imperial Ice Co. v. Rossier*, 18 Cal. 2d 33 (1941); *see, e.g.*, *Huynh*, 111 Cal. App. 4th at 1194 ("[T]he privilege is most often applied to bar actions against managers of a business entity that charge the managers with inducing the entity to breach a contract.") They appear hesitant to extend the scope of the privilege beyond select limited circumstances. *Compare McCabe*, 811 F.2d at 1339 (applying privilege in wrongful discharge context), *with Onelum v. Best Buy Stores, L.P.*, 948 F. Supp. 2d 1048, 1052 (C.D. Cal. 2013) (declining to apply the privilege in the intentional infliction of emotional distress context and noting that "Defendants fail to cite a single case" in which a court does so). The Court has been unable to identify a single case in which a court has applied the privilege in the context of the wage and hour provisions of the California Labor Code. Defendants provide no compelling reason for this Court to take this novel step. Estrada's alleged conduct is not immunized by the manager's privilege.

As mentioned, California Labor Code § 558.1, provides that "[a]ny employer or other person acting on behalf of an employer, who violates, or causes to be violated [various wage and hour provisions] may be held liable as the employer for such violation." An "other person acting on behalf of an employer" is defined "a natural person who is an owner, director, officer, or managing agent of the employer." Cal. Lab. Code § 558.1(b). The term "managing agent" in section 558.1 is defined as having the same meaning as "managing agent" in Cal. Civ. Code § 3294. Cal. Civ. Code § 558.1(b). The California Supreme Court has held that a "managing agent" for the purposes for section 3294 includes "supervisors who have broad discretionary powers and exercise substantial discretionary authority in the corporation could be managing agents." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 577 (1999). However, it excludes "supervisors

who have no discretionary authority over decisions that ultimately determine corporate policy."

*Id*.

The undersigned summarized the relevant caselaw in the context of evaluating California Labor Code claims brought against managers under somewhat similar circumstances in *Barajas v. Blue Diamond Growers Inc*., No. 1:20-CV-0679 JLT SKO, 2022 WL 1103841 (E.D. Cal. Apr. 13, 2022):

> In *White*, the plaintiff worked at a store owned by Ultramar, which owned several stores and employed "zone managers" for regions. *See id*., 21 Cal. 4th at 566, 577. White asserted the zone manager over his store, Lorraine Salla, was a "managing agent" of Ultramar. *See id.* at. 566-68. The court observed:
>
>> As the zone manager for Ultramar, Salla was responsible for managing eight stores, including two stores in the San Diego area, and at least sixty-five employees. The individual store managers reported to her, and Salla reported to department heads in the corporation's retail management department.
>>
>> The supervision of eight retail stores and sixty-five employees is a significant aspect of Ultramar's business. The testimony of Salla's superiors establishes that they delegated most, if not all, of the responsibility for running these stores to her. The fact that Salla spoke with other employees and consulted the human resources department before firing plaintiff does not detract from her admitted ability to act independently of those sources.
>
> *Id*. at 577. The court found that while "Salla's supervision of plaintiff and her ability to fire him alone were insufficient to make her a managing agent," the evidence also showed "Salla exercised substantial discretionary authority over vital aspects of Ultramar's business that included managing numerous stores on a daily basis and making significant decisions affecting both store and company policy." *Id*. Accordingly, the Court concluded Salla was a "managing agent" of Ultramar. *Id*. at 578.
>
> Following *White*, courts decline to find employees are managing agents when the facts do not show the employee was vested with discretionary authority over the business. *See, e.g., Taylor v. Trees, Inc*., 58 F. Supp. 3d 1092, 1106-07 (E.D. Cal. 2014) (evaluating the facts upon a motion for summary judgment); *Gonzalez v. Sheraton Operating Corp*., 2020 WL 7042817, at *1-2 (C.D. Cal. Dec. 1, 2020) (finding conclusory allegations that the plaintiff's supervisor was a "an owner director, officer, or managing agent" to be insufficient to invoke liability under Section 558.1); *Nguyen v. Erricson, Inc*., 2018 WL 2836076, at *2-3 (N.D. Cal. June 11, 2018) (reviewing the allegations on a motion to remand to determine whether the plaintiff could state a claim against his

8

supervisor as a "managing agent").

In *Taylor*, this Court found the plaintiff failed to establish his supervisor was a "managing agent" under California law. *Taylor* sought to hold his former employer, Trees Inc., liable for discrimination, and Trees argued "a managing agent was not involved in any of the allegedly improper conduct." *Id.*, 58 F. Supp. 3d at 1096, 1103. Taylor argued his general foreman, Ronnie Colis, was a managing agent, because Colis oversaw crews and foremen and had "complete discretion in running these crews, including determining an employee's ability to return to work after injury." *Id.* at 1104. The Court observed the evidence showed "Colis was the General Foreman for one of the two Trees yards in Fresno," while Trees operated in 21 states and "in other California cities, including Yuba City, Modesto, Tulare, Sacramento, Turlock, Stockton, Jamestown, Paso Robles, Sonora, and Watsonville." Id. The Court found there was "insufficient evidence that the Fresno yard managed by Colis was a substantial portion of [the] business." *Id*. Although "Colis had the ability to hire and fire, discipline, and train employees," there was "no evidence that describe[d] the nature or extent of Colis's authority." *Id*. at 1107. The Court determined "the evidence does not indicate that Colis had substantial discretionary authority over significant aspects of Trees's business, or that Colis's decisions created corporate policy." Thus, the Court concluded Colis was not a "managing agent" as defined by California law. *Id*.

The Northern District addressed similar facts in *Nguyen*, in which the plaintiff asserted his supervisor, Michael Wilcox, was a "managing supervisor" and sought to hold Wilcox liable for violations of wage and hour laws under Section 558.1. *Id*., 2018 WL 2836076, at *2-3. Nguyen argued, "Wilcox oversaw the location where Plaintiff worked and supervised the daily work of employees." *Id*. at *3. Specifically, Nguyen alleged that "he reported to Wilcox, Wilcox gave Plaintiff his daily assignments, and Wilcox reviewed all hours submitted for compensation and all requests for reimbursement." Id. (internal quotation marks omitted). The court found the allegations were insufficient "to show that Wilcox had substantial discretionary authority over a significant aspect of [the] business or that Wilcox had 'broad and unlimited authority.'" *Id*. Further, the court observed there were no "allegations from which to infer that Wilcox's decisions created corporate policy." *Id*. Accordingly, the court concluded "the allegations in the complaint fail to establish that Wilcox was a 'managing agent of the employer" as required by California Labor Code section 558.1(b)." Id. at *2 (emphasis omitted).

*Barajas*, 2022 WL 1103841, at *5–*6.

In *Barajas*, the plaintiffs alleged that managers at an almond processing plant instructed employees to: (a) put on protective equipment prior to clocking in and remove the same after clocking out, (b) wear radios in the "on" position during meal periods, and (c) respond to their

9

1 radios for work related matters without compensation. *Id*. at *6. The Court found these allegations
2 insufficient because "this at most shows limited supervising authority over employees' daily
3 assignments." *Id*. There were no allegations addressing "the nature or extent of" the authority
4 vested in the supervisors, such as allegations indicating the supervisors had similar authority over
5 employees at other plants which might give rise to the inference that the managerial defendants
6 had substantial discretionary authority over significant aspects of the business. *Id*. Ultimately,
7 there were no allegations to support the conclusion that the managers had authority to make
8 decisions creating or affecting corporate policies. *Id*. The Barajas complaint was therefore
9 dismissed with leave to amend. *Id*. at *25.[3]

10 Guzman alleges that Estrada "exercised control over the wages, hours and/or working
11 conditions of Plaintiff and other Class Members, including by informing employees when to
12 report to work and what work hours should actually be recorded (including by informing Plaintiff
13 that she was to wash her hands before clocking in)." (Doc. 10, ¶4.) Facially, these allegations are
14 arguably less robust than those found insufficient in *Barajas*. However, the procedural posture of
15 this matter is different, mandating a different analysis. *Barajas* evaluated a motion to dismiss for
16 failure to state a claim, not a fraudulent joinder argument. As mentioned, in evaluating fraudulent
17 joinder, this Court must consider "whether a deficiency in the complaint can possibly be cured by
18 granting the plaintiff leave to amend." *Grancare*, 889 F.3d at 550. In applying this standard, one
19 district court noted that because the term "managing agent" includes some supervisors but not
20 others, determining where to draw the line is a "fact-intensive inquiry" that requires a close
21 evaluation of the managerial defendant's responsibilities and role in corporate policy. *Garcia v.*
22 *Keefe Commissary Network*, LLC, No. EDCV 2-0695 JGB (SHKx), 2020 WL 3268542, at *3
23 (C.D. Cal. June 16, 2020). Under these circumstances, even very general allegations that a
24 defendant was a supervisor were deemed sufficient to avoid a fraudulent joinder finding. *Id*. This
25 is the case even where the court finds that allegations would likely not survive a Rule 12(b)(6)
26 motion. *See Garcia v. Reflection Window Co., LLC*, No. 2:21-CV-03681-MCS-PD, 2021 WL

---

[3] The *Barajas* plaintiffs filed an amended complaint; a motion to dismiss the amended managing agent allegations remains pending before the undersigned as of the date of this order. (*See docket*, *Barajas v. Blue Diamond Growers*, 1:20-cv-00679-JLT-SKO.)

4353256, at *2 (C.D. Cal. May 28, 2021) (although allegations that defendant was an "an employer, owner, or managing agent" of corporate defendant and "participated in the unlawful scheme to designate Plaintiff as an exempt salaried employee" likely would not survive a motion to dismiss, the court could not conclude there was no possibility the Plaintiff could amend to support a claim against the manager); *see also Gonzalez v. Sheraton Operating Corp.*, No. CV 20-8785 DSF (AGRx), 2020 WL 7042817, at *2 (C.D. Cal. Dec. 1, 2020)(finding no fraudulent joinder because determination of whether an individual is a "managing agent" is a fact-intensive inquiry and it would not be impossible for plaintiff to rectify pleading deficiencies by way of amendment).

Defendants submit a declaration from Estrada in an attempt to define the scope of his role. (*See* Doc. 40-2.)[4] Estrada indicates that during the relevant time period, he served as Peri & Sons' "packing shed manager." (*Id*., ¶ 2.) In that role, he "supervised the grading, packing, and sipping" of produce but "was not the direct supervisor of line workers." (*Id*., ¶ 3.) He also disclaims employing anyone directly, denies being a manager, member, director, or officer of Peri & Sons, and further indicates that he never set out the employment procedures or payroll practices of Peri & Sons. (*Id*., ¶¶ 5–8.) To the contrary, Defendant provided him training about the corporate policies, and he claims to have followed those policies. (*Id*., ¶ 8.) Finally, Estrada denies having been involved in the "policymaking process" and has claims to have had "no authority to change [Peri & Sons'] policies or procedures. (*Id*., ¶ 9.)

Though these statements suggest Estrada may not ultimately qualify as a managing agent, they are largely conclusory in nature.  Moreover, they do not address the specific allegations in the Complaint that indicate Estrada personally directed employees to record their hours in ways that violated California's labor laws. (See Doc. 10, ¶ 4.) As mentioned, the determination of whether an individual is a "managing agent" is a fact-intensive inquiry "that does not rely on corporate labels." *Sheraton*., 2020 WL 7042817, at *2.

Consequently, the Court cannot  conclude that Estrada has been fraudulently joined to this

---

[4] Guzman objects to the Court's consideration of some aspects of this declaration. (Doc. 42-1 at 6.) Given the Court's ultimate decision that remand is appropriate, the Court declines to address these objections.

1    lawsuit. Accordingly, Estrada's citizenship must be considered for diversity purposes and
2    complete diversity therefore does not exist because Guzman and Estrada are both citizens of
3    California. The Court therefore lacks jurisdiction under 28 U.S.C. § 1332. Because of this
4    conclusion, the Court finds it unnecessary to evaluate the parties' arguments regarding whether
5    the $75,000 amount in controversy is met.

## IV.    CAFA JURISDICTION

Even where a court lacks jurisdiction under the traditional diversity statute, CAFA may provide an independent basis for establishing jurisdiction. A party seeking to remove an action to federal court under CAFA bears the burden of making a prima facie showing of federal jurisdiction. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021 (9th Cir. 2007). CAFA sets forth three prerequisites for establishing jurisdiction. First, all proposed classes must number at least 100 members in the aggregate. *See* 28 U.S.C. § 1332(d)(5)(B). Second, the parties must be minimally diverse, meaning that at least one plaintiff is from a different state than at least one defendant. *See* 28 U.S.C. § 1332(d)(2)(A). Third, the amount in controversy must exceed $5 million, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2). Unlike the traditional diversity statute, CAFA imposes no presumption against removal. *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89.

First, the parties appear to agree that the proposed class numbers at least one hundred members in the aggregate. Guzman acknowledges in the Amended Complaint that "there are over seventy-five (75) Class Members employed by Defendants within the State of California" and that "[a]ccounting for employee turnover during the relevant periods necessarily increases this number. (Doc. 10 at 9.) Defendants state in the Notice of Removal that, during the relevant period of four years, Peri & Sons employed 553 employees in 2020, 636 employees in 2019, 563 employees in 2018, and 471 employees in 2017. (*See* Doc. 1 at 5.) "And, not all of these employees overlap year to year." (*Id.*) Guzman does not challenge these assertions in her Motion to Remand.

CAFA's minimal diversity requirement is also satisfied. As noted above, the parties agree that Peri & Sons is a Nevada citizen, and the Court has found that Guzman is a California citizen.

12

*See* 28 U.S.C. § 1332(d)(2)(A).

The primary dispute centers on whether the amount in controversy exceeds $5 million. In the Notice of Removal, Defendants assert that Guzman's fifth cause of action (regarding the failure to pay all wages due upon termination) alone is sufficient to establish an amount in controversy exceeding $5 million. (Doc. 1 at 4 (arguing that the fifth cause of action aggregates to $6,465,194.40).) They further assert that Guzman's third and fourth causes of action (regarding the failure to provide meal periods and rest periods, respectively) would add an additional $9,765,194.40 to the amount in controversy, based on the aggregation of the yearly calculation of ninety workdays multiplied by two additional hours earned of rest and meal periods, multiplied by the number of class members. (*Id.* at 4–5.)

Guzman attacks these calculations in her Motion to Remand. (Doc. 31.) Defendants slightly revise their calculations in their opposition to the motion to remand (Docs. 41, 41-4), but Guzman maintains that even these revised figures are overstated. (Doc. 42.) In evaluating this dispute, the Court focuses on Defendant's revised calculations.

The fifth cause of action is a focal point for the parties' briefing and provides a testing ground for the critical issues in dispute. The fifth cause of action alleges that Defendants failed to pay all wages due at termination to members of the putative class. (Doc. 1-2 at 58–65.) Specifically, due to Defendants' failure "at times, to provide overtime wages" during the three years prior to the filing of the Complaint, Defendants relatedly failed "at times, to pay Plaintiff and all Class Members all wages earned prior to termination or resignation." (Doc. 1-2, ¶ 61.) As a result, Guzman alleges that Defendants are entitled to waiting time penalties "up to a maximum of thirty (30) days" wages. (*Id.*, ¶ 63.)

Defendants assert in their opposition papers that this claim places in controversy $3,230,241.60. (Doc. 41 at 14; Doc. 41-4, ¶ 29.) They reach this figure by first determining how many of Defendants' non-exempt, hourly California employees "worked in similar positions and on similar schedules" as Plaintiff. (Doc. 41-4 at ¶¶ 25–27 ("PSFCA had 187, 269, 352, and 292 workers in 2017, 2018, 2019, and 2020, who, respectively, worked in similar positions and on similar schedules as Ms. Guzman.").) Using this number of employees, Defendants multiplied the

13

number of similar employees in each year by the amount that employee would have earned in 30 days (i.e., the hourly rate, times 8 hours, times 30 days). This is expressed in the following chart:

| Year | No. of Similar Employees | Hourly Wage | Waiting Penalties |
|---|---|---|---|
| 2020 | 292 | $14.77/hr. | $1,035,081.60 |
| 2019 | 352 | $12.00/hr. | $1,013,760.00 |
| 2018 | 269 | $11.00/hr. | $710,160.00 |
| 2017 | 187 | $10.50/hr. | $471,240.00 |
| TOTAL | | | $3,230,241.60 |

(*See id.*, ¶ 29.)[5]

Guzman takes issue with these calculations on numerous levels. First, Guzman points out that Defendants appear to be assuming that employees would be entitled to a full 30-day waiting period for every year they worked for the company, even if they returned year after year for seasonal work. (Doc. 31 at 15–16.) This is even though the statutory scheme limits these penalties to 30 days of wages. *See* Cal. Lab. Code § 203. Defendants appear to concede that at least some of these employees return year after year (Doc. 1 at 5 (arguing "not all of these employees overlap year to year" when explaining why the proposed class has more than 100 members)), yet cite no authority for stacking the 30 days of wages for those who do overlap year to year.

Even assuming that the waiting time penalties can be stacked year after year, Guzman argues that Defendants are improperly assuming a 100% violation rate for employees who worked in similar positions on similar schedules as Guzman. (Doc. 42 at 8.) Guzman points out that the Complaint very plainly did not allege a violation rate that would support such a calculation. Rather, it alleged "Defendants have, *at times* failed to pay Plaintiff and Class Members, *or some of them*, the full amount of their wages owed to them prior to termination and/or resignation as required by Labor Code sections 201 and 202." (Doc. 1-2, ¶ 15.) The Ninth Circuit disfavors the use of a one hundred percent violation rate to calculate the amount in controversy in the wage and hour context. *Garibay Archstone Cmtys LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013); *Biag v. King George – J&J Worldwide Servs. LLC*, 2020 WL 4201192, at *6

---

[5] The Court assumes without deciding that it may be appropriate to consider four years of data in relation to the claims in this case. (*See* Doc. 41 at 15 (discussing application of four-year statute of limitations period for any action in which a California Unfair Competition Claim is brought).)

1  (S.D. Cal. July 22, 2020); *Weston v. Helmerich & Payne Inter. Drilling Co.*, 2013 WL 5274283,
2  at *5–6 (E.D. Cal. Sept. 17, 2013).

3  Defendants' response to this challenge is unsatisfying, bordering on circular. They claim
4  they have not assumed a 100% violation rate because they have "performed their calculations on
5  the sample of Peri & Sons non-exempt hourly employees that make up approximately half of the
6  total workforce." (Doc. 41 at 17; *see also* Doc. 41-4, ¶ 27 (indicating that the calculations were
7  performed on 48.5% of Defendants' total employee base).) In this way, Defendants are
8  attempting to suggest that they are using a violation rate of 48.5%. But this is a sleight-of-hand
9  because the 48.5% figure refers to the fraction of total Peri & Sons employees who worked in
10 positions and on schedules like Plaintiff Guzman. As Guzman points out, *these are the only*
11 *employees she seeks to represent in the class*. In other words, the "half" of the workforce that
12 Defendants claim to be counting consists of the entire pool of employees that could ever qualify
13 as members of the class. As a result, Defendants are applying a 100% violation rate without any
14 discernable justification for doing so.

15 Though a 100% violation rate might be justifiable in certain, narrow circumstances, such
16 as when the complaint alleges violations occurred "at all material times," *see Garza v. Winco*
17 *Holdings, Inc.*, No. 1:20-CV-01354-JLT-HBK, 2022 WL 902782, at *7 (E.D. Cal. Mar. 28, 2022)
18 (collecting cases), there are no such allegations in this case. In contrast, courts have determined
19 that various violation rates between 20% and 60% can be reasonably assumed depending on the
20 nature of the allegations in the complaint. *Id*. It is not the Court's role to determine *sua sponte* the
21 appropriate violation rate. As one California district court recently explained, some courts
22 previously "tried to divine what might be a reasonable violation rate based on the complaint's
23 language describing the defendant-employer's policies" but more recently the trend is to decline
24 to allow defendants to "to translate vague . . . language in a complaint into a purportedly
25 reasonable violation level without providing any evidence at all." *Gonzalez v. Randstad Pros. US,*
26 *LLC*, No. 2:22-CV-05744-JLS-PD, 2022 WL 17081053, at *3 (C.D. Cal. Nov. 18, 2022) (internal
27 quotations and citations omitted). The undersigned agrees with the *Gonzalez* decision that courts
28 should avoid "an approach that amounts to little more than plucking a violation rate out of the air

1  and calling it 'reasonable'" because this is an "exercise in mathematical fantasyland." *Id*. (internal
2  citations and quotations omitted); *see also id*. ("If one is going to assume a violation rate based on
3  vague language in a complaint, then there is no basis for assuming that a 100% or 50%—or even
4  25%—violation rate is any more or less reasonable than a violation rate of once per week or once
5  per month.").

6      As detailed in Plaintiff's reply regarding her motion to remand (Doc. 42 at 9–11),
7  Defendants' 100% violation rate taints their calculations as to all the other class claims in the
8  case. The Complaint's allegations plainly allege that overtime violations occurred "at times."
9  (Doc. 1-2, ¶ 33.) The same goes for the alleged minimum wage violations (*see id.*, ¶ 39
10 (Defendants failed, "*at times*, to accurately track and/or pay for all minutes actually worked at
11 their regular rate of pay") (emphasis added)), the alleged meal and rest period violations *(see id.*,
12 ¶ 46 (Plaintiff and Class Members were~ at times, not provided complete, timely 30-minute,
13 duty-free uninterrupted meal periods every five hours of work" and "at times, Defendants failed
14 to provide one (1) additional hour of pay at the Class Member's regular rate of compensation on
15 the occasions that Class Members were not provided compliant meal periods"); *see also id*., ¶ 54
16 (similar rest break allegations)), as well as the alleged wage statement allegations (*id.*, ¶ 69).

17     Without any basis upon which to determine a reasonable violation rate, the Court has no
18 way of determining whether the minimum amount in controversy is satisfied. Plaintiffs offer a
19 plausible alternative set of calculations that is far below the CAFA jurisdictional minimum. It is
20 ultimately Defendants' burden to demonstrate the amount in controversy has been met. They have
21 not done so here.

### V.    MOTIONS TO DISMISS

23     In light of the remand of this action, the Court declines to address directly[6] either of the
24 pending motions to dismiss.

### VI.    CONCLUSION AND ORDER

26     For the reasons set forth above:

---

[6] As mentioned, Defendants incorporated aspects of their motion to dismiss the claims against Estrada into their opposition to the motion to remand. The Court has considered the dismissal papers only insofar as they pertain to the fraudulent joinder standard.

16

1. Plaintiff's motion to remand (Doc. 31) is **GRANTED**.
2. The Clerk of Court is directed to remand this action to the Imperial County Superior Court.

IT IS SO ORDERED.

Dated: __December 22, 2022__                                                  *Jennifer L. Thurston*
                                                                        UNITED STATES DISTRICT JUDGE